UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>   v.<br><br>GYPSY LAWSON and FRAN OGREN,<br><br>             Defendants. | No.  CR-08-026-FVS-1<br>      CR-08-026-FVS-2<br><br>ORDER DENYING DEFENDANTS'<br>MOTIONS FOR JUDGMENT OF<br>ACQUITTAL |

**THIS MATTER** came before the Court on April 27, 2009, based upon the defendants' motions for judgment of acquittal.  Gypsy Lawson was represented by Kimberly Deater.  Fran Ogren was represented by Joshua Rosen and Kailey Moran.  The government was represented by Stephanie Van Marter.  This order serves to memorialize the Court's oral ruling.

**BACKGROUND**

Gypsy Lawson and Fran Ogren flew to Thailand during 2007.  While there, they searched for a monkey to take back to the United States.  Ultimately, they purchased a Rhesus Macaque.  When it came to return to the United States, they sedated the monkey.  Once the monkey was sedated, Ms. Lawson hid it under her clothing; creating the appearance that she was pregnant.  Ms. Lawson and Ms. Ogren did not seek permission from Thai officials to take the monkey out of Thailand, nor did they disclose the monkey's presence to American officials when

ORDER - 1

they arrived in Los Angeles. Ms. Lawson and Ms. Ogren knew that they were violating the law, and that they could be punished if they were caught. As it turned out, neither Thai nor American officials detected the monkey while the women were traveling. It was not until after they had returned to the Eastern District of Washington that American officials learned of the monkey's existence, and then only because they received a tip from a concerned citizen. On July 22, 2008, the government filed a Superseding Indictment. Count One charged Ms. Lawson and Ms. Ogren with conspiracy. 18 U.S.C. § 371. Count Two charged them with violating 18 U.S.C. § 545. A jury found both women guilty of both crimes. They filed a timely motion for judgment of acquittal. Fed.R.Crim.P. 29(c).

**RULING**

A. Alternative Methods of Committing a Single Crime

Section 545 of Title 18 is divided into paragraphs. The first two paragraphs create separate crimes. *Olais-Castro v. United States*, 416 F.2d 1155, 1157-58 (9th Cir.1969). The defendants were convicted of violating the second paragraph, which makes it unlawful to:

> fraudulently or knowingly import[] or bring[] into the United States, any merchandise contrary to law, or receive[], conceal[], buy[], sell[], or in any manner facilitate[] the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law[.]

18 U.S.C. § 545. The defendants argue that the second paragraph of §

ORDER - 2

545 creates at least two crimes.  In their opinion, one crime consists of importing merchandise into the United States contrary to law; the other crime consists of receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of such merchandise after importation.  The government disagrees with the defendants' interpretation of the second paragraph of § 545.  According to the government, the second paragraph describes alternative means by which a person may commit a single crime.

Neither the Ninth Circuit nor any other circuit court of appeals has addressed the parties' competing interpretations of the second paragraph of § 545.  However, the Ninth Circuit has provided guidance.  In *United States v. Arreola*, 467 F.3d 1153, 1157 (9th Cir.2006), the circuit court explained that it employs the analytical framework established in *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir.1976), when asked to determine whether a statute creates separate offenses or simply describes alternative means of committing the same crime.  "Under *UCO Oil*, we consider . . . (1) [the] 'language of the statute itself,' (2) 'the legislative history and statutory context,' (3) the type of conduct proscribed, and (4) the 'appropriateness of multiple punishment for the conduct charged in the indictment.'" *Arreola*, 467 F.3d at 1157 (quoting *UCO Oil Co.*, 546 F.2d at 836-38).

It is appropriate to begin with the language of the statute. *Arreola*, 467 F.3d at 1157.  Congress could have divided the second paragraph of § 545 into separate paragraphs.  This would have strongly

ORDER - 3

suggested that Congress intended to create more than one crime. 467 F.3d at 1157. Instead, Congress left the second paragraph as a single unit. The fact that Congress did so indicates an intent to create a single crime. *See id.* Granted, the second paragraph of § 545 is composed of several clauses. As the defendants observe, it is unlawful either to "fraudulently or knowingly import[] or bring[] into the United States, any merchandise contrary to law, **OR** receive[], conceal[], buy[], sell[], or in any manner facilitate[] the transportation, concealment, or sale of such merchandise after importation[.]" 18 U.S.C. § 545 (capitalization and emphasis added). The fact the preceding clauses are divided by a disjunctive "or" is relevant, but not especially helpful to the defendants. Ordinarily, the fact a statute uses a disjunctive "or" means the statute is specifying two or more ways in which a single crime can be committed. *See, e.g., United States v. Booth*, 309 F.3d 566, 572 (9th Cir.2002) ("[i]t is apparent from the disjunctive 'or' . . . that the crime may be committed with either of the two specified states of mind"). This reading of the second paragraph of § 545 is reinforced by considering the penalty provision. Punishment does not vary depending upon whether a person imports merchandise contrary to law or whether he facilitates the transportation of unlawfully imported merchandise. In either event, the punishment is the same. Uniformity of penalty suggests that Congress intended to create a single crime. *Arreola*, 467 F.3d at 1157-58. Indeed, that is the most sensible interpretation

ORDER - 4

of the second paragraph of § 545.  The various clauses of that paragraph are simply alternative means by which a person may commit a single crime.

### B. Merchandise

The term "merchandise" is not defined by § 545.  As a result, the Ninth Circuit uses the definition set forth in 19 U.S.C. § 1401(c).  *United States v. Garcia-Paz*, 282 F.3d 1212, 1214 (9th Cir.2002).  Under § 1401(c), "[t]he word 'merchandise' means goods, wares, and chattels of every description, and includes merchandise the importation of which is prohibited[.]"  The Rhesus monkey was the defendants' chattel.  Black's Law Dictionary 229 (7th ed.1999).  Thus, the monkey constituted merchandise within the meaning of § 545.

### C. Contrary to Law

The government presented overwhelming evidence that the defendants left Thailand with a monkey and brought the monkey into the United States with them.  Witnesses variously described the defendants' monkey as a "Rhesus monkey" and a "Rhesus Macaque."  It was clear that the witnesses were referring to the defendants' monkey.  After considering all of the evidence, the jury found that the defendants imported, concealed, and transported a Rhesus Macaque, *i.e.*, a monkey.  It is common knowledge that a monkey is a primate.  For example, anyone who has toured a reputable zoo can attest to that fact.  Consequently, it was unnecessary for the government to offer expert testimony in order to establish that a monkey is a primate.

ORDER - 5

*Cf. United States v. Miller*, 981 F.2d 439, 443 (9th Cir.1992) ("The common knowledge of even schoolchildren that saguaro is cactus made expert testimony on its botanical character unnecessary.").

All primates are included in either Appendix I or Appendix II of the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES" or "Convention"), 27 U.S.T. 1087, T.I.A.S. No. 8249. Both Thailand and the United States signed the Convention. The United States implemented its CITES obligations through the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ("ESA"). *See, e.g., United States v. Norris*, 452 F.3d 1275, 1277-78 (11th Cir.2006); *United States v. Koczuk*, 252 F.3d 91, 97-98 (2d Cir.2001). Under the ESA, "[i]t is unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of the Convention[.]" 16 U.S.C. § 1538(c)(1). Congress authorized the Secretary of the Interior to promulgate regulations in order to enforce the ESA. 16 U.S.C. § 1540(f). In response, the Secretary promulgated Part 23 of Title 50 of the Code of Federal Regulations. 50 C.F.R. § 23.1(a) ("[t]he regulations in [Part 23] implement the Convention on International Trade in Endangered Species of Wild Fauna and Flora").

The jury convicted the defendants of violating the second paragraph of 18 U.S.C. § 545. In order to convict them, the jury had to find that they imported merchandise contrary to law. Administrative regulations do not necessarily constitute "law" for

ORDER - 6

purposes of 18 U.S.C. § 545.  *United States v. Alghazouli*, 517 F.3d 1179, 1187 (9th Cir.2008), *cert. denied*, --- U.S. ----, 129 S.Ct. 237, 172 L.Ed.2d 180 (2008).  "The term ['law'] includes a regulation only if there is a statute (a 'law') that specifies that violation of that regulation is a crime."  *Id.* at 1187.  Here, there is such a statute.  Section 1538(c)(1) of Title 16 makes it unlawful "to engage in any trade in any specimens contrary to the provisions of the Convention[.]"  The United States' obligations under the Convention are embodied in the regulations contained in Part 23.  50 C.F.R. 23.1(a).  Since § 1538(c)(1) makes it unlawful to engage in trade that is "contrary to the provisions of the Convention," and since the relevant provisions of the Convention are embodied in Part 23, a person who violates the regulations set forth in Part 23 violates the law.  This interpretation is consistent with the Secretary's understanding of the consequences of violating the regulations that are contained in Part 23:

> Except as provided in § 23.92, it is unlawful for any person subject to the jurisdiction of the United States to conduct any of the following activities unless they meet the requirements of this part:
>     (a) Import, export, re-export, or engage in international trade with any specimen of a species listed in Appendix I, II, or III of CITES.
>         . . . .

50 C.F.R. § 23.13.

Even if the Part 23 regulations are not "law" for purposes of 18 U.S.C. § 545, the government nonetheless presented evidence which is

ORDER - 7

sufficient to prove that the defendants imported a primate contrary to law. Article IV of the Convention imposes restrictions upon the trade in Appendix II species, of which the Rhesus Macaque is one. Not only were the defendants required to obtain an export permit from Thailand, but also they were required to obtain an import permit from the United States. CITES, Art. IV, ¶¶ 2, 4. The defendants did not attempt to obtain either permit. Consequently, when they removed a Rhesus Macaque from Thailand and brought it into the United States, they violated 16 U.S.C. § 1538(c)(1) by engaging in trade that is contrary to the provisions of the Convention. In other words, they acted contrary to law within the meaning of the second paragraph of 18 U.S.C. § 545.

### D. Genus and Taxon

The Superseding Indictment alleged, in part, that the "Rhesus Macaque (*macaca mullata*)" is subject to "Appendix II permit requirements." (Superseding Indictment at 2 (italicization in the original)). Given that allegation, the defendants argue it was incumbent upon the government to prove both the Genus (*Macaca*) and Taxon (*Macaca mulatta*) of the Rhesus monkey. The defendants are incorrect. The government is not required to prove all of the facts that are alleged in an indictment simply because the indictment alleges them. *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir.1986). To the contrary, the government is obligated to present "only enough facts to prove the essential elements of the crime

ORDER - 8

[charged in the indictment]." *Id.* As explained above, there is more than one method by which a person may violate the second paragraph of § 545. However, each method requires proof that merchandise was imported into the United States contrary to law. Here, the merchandise was a primate. In order to prove that the primate was unlawfully imported, the government had to prove it is covered by CITES. Were only some primates covered by CITES, it might be necessary for the government to offer evidence concerning a particular primate's Genus and Taxon in order to prove that it is covered. However, all primates are covered by either Appendix I or Appendix II of the Convention. There are no exceptions. Thus, it was unnecessary for the government to identify a particular primate by Genus and Taxon. The Superseding Indictment's reference to a *Macaca mulatta* is mere surplusage. As such, it need not be proved. *See Jenkins*, 785 F.2d at 1392 ("Insofar as the language of an indictment goes beyond alleging elements of the crime, it is mere surplusage that need not be proved").

### E. Jury Unanimity Preserved

The defendants argue that both Count 1 (conspiracy) and Count 2 (violating 18 U.S.C. § 545) are duplicitous. "An indictment is duplicitous where a single count joins two or more distinct and separate offenses." *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir.2001), *cert. denied*, --- U.S. ----, 123 S.Ct. 330, 154 L.Ed.2d 226 (2002). A duplicitous count threatens a defendant's Sixth

ORDER - 9

Amendment right to a unanimous verdict. *United States v. Savage*, 67 F.3d 1435, 1439 (9th Cir.1995). When a jury returns a verdict of guilty with respect to a duplicitous count, a court cannot always be confident that the jury agreed unanimously with respect to which of the two crimes the defendant committed. *See id.*

Count One alleged that the defendants committed "the following offense against the United States: Smuggling/Concealing/Receiving of Goods into the United States, to-wit: a Rhesus Macaque, in violation of Title 18, United States Code, Section 545, all in violation of 18 United States Code 371." (Superseding Indictment at 3). The word "smuggling" is found in the first paragraph of § 545. The words "concealing" and "receiving" are found in the second paragraph. The defendants think that each of the three words -- *i.e.*, "smuggling," and "concealing," and "receiving" -- represents a separate conspiracy allegation. In other words, they think Count One charged them with three separate conspiracies. That being the case, say the defendants, Count One is duplicitous. They are incorrect. "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects." *United States v. Smith*, 891 F.2d 703, 712 (9th Cir.1989) (internal punctuation and citations omitted), *amended by* 906 F.2d 385 (9th Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). *See also United States v. Begay*, 42 F.3d 486, 501 (9th Cir.1994) ("An indictment charging conspiracy to

ORDER - 10

commit more than one offense is not duplicitous.").

Count Two alleged that the defendants violated 18 U.S.C. § 545 by "knowingly import[ing] and bring[ing] into the United States merchandise, to wit: a Rhesus Macaque, contrary to law[.]" (Superseding Indictment at 3). The defendants acknowledge that Count Two follows the language of the second paragraph of § 545. Since, in the defendants' opinion, the second paragraph defines more than one crime, and since Count Two charges them with violating the second paragraph, it follows, say the defendants, that Count Two is duplicitous. They are incorrect. The second paragraph of § 545 describes alternative means by which a person can commit a single crime. Count Two is not duplicitous.[1]

Even if Counts One and Two were duplicitous, the defendants are not entitled to judgment of acquittal on that ground. "[A] defendant indicted pursuant to a duplicitous indictment may be properly

---

[1] The defendants rely heavily upon *Torres Martinez v. United States*, 220 F.2d 740 (1st Cir.1955), to support their assertion that the Superseding Indictment is duplicitous. In *Torres Martinez*, the First Circuit analyzed a count that was based upon former 21 U.S.C. § 174. 220 F.2d at 742-43. The First Circuit implied that the count was duplicitous. *Id.* at 743. It is questionable whether the Ninth Circuit would have agreed. *Cf. Pon Wing Quong v. United States*, 111 F.2d 751, 755 (9th Cir.1940) (holding that a count which charged the defendant with concealing and facilitating the concealment of opium after its importation was not duplicitous). In any event, the First Circuit's analysis provides little guidance here.

prosecuted and convicted if . . . the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *Ramirez-Martinez*, 273 F.3d at 915. The Court provided verdict forms to the jurors that required them to make specific findings in the event they found a defendant guilty. The jurors made specific findings with respect to each count. Consequently, the defendants were not deprived of their Sixth Amendment right to a unanimous verdict.

F. Venue

"Article III of the Constitution, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure all guarantee that a defendant will be tried in the state where the crimes were committed." *United States v. Corona*, 34 F.3d 876, 878-79 (9th Cir.1994). The defendants were charged with conspiracy (Count One) and violating 18 U.S.C. § 545 (Count Two). They now allege that the Eastern District of Washington is not the proper venue for those charges.[2] When a defendant is charged with both a substantive crime and a conspiracy, a

---

[2] A venue challenge may be waived. *United States v. Novak*, 443 F.3d 150, 161 (2d Cir.), cert. denied, 549 U.S. 997, 127 S.Ct. 525, 166 L.Ed.2d 371 (2006). The defects that the defendants now allege were readily apparent on the face of the Superseding Indictment, yet they did not challenge venue prior to trial. As a result, they waived their right to challenge venue. *Id.* ("When the defect in venue is apparent on the face of the indictment, a defendant waives the right to contest the issue if he or she fails to object prior to trial.").

ORDER - 12

district court "must conduct a separate venue analysis for the substantive crime[] and the conspiracy, even if the substantive crime[] [is] committed in furtherance of the conspiracy." *Id.* at 879.

*1. Venue for conspiracy charge*

The defendants submit that Count One charged them with three separate conspiracies. According to the defendants, one conspiracy involved an alleged agreement to smuggle merchandise into the United States. *See* 18 U.S.C. § 545 (first paragraph). Another conspiracy involved an alleged agreement to conceal unlawfully imported merchandise. *See* 18 U.S.C. § 545 (second paragraph). A third conspiracy involved an alleged agreement to receive unlawfully imported merchandise. *See* 18 U.S.C. § 545 (second paragraph). The defendants argue that the Eastern District of Washington was not the proper venue for any of the three conspiracy charges alleged in Count One. The problem with this argument is that it is based upon an unwarranted assumption. Count One did not allege multiple conspiracies. It alleged a single agreement to engage in conduct that violated 18 U.S.C. § 545. "[V]enue is appropriate in any district where an overt act committed in the course of the conspiracy occurred." *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir.1988) (internal punctuation and citations omitted). A rational jury could have found that the defendants or their co-conspirator, James Pratt, committed at least one overt act in this district. For example, the jury heard evidence that the defendants drove the monkey

ORDER - 13

from Los Angeles to the Eastern District of Washington.  The jury rationally could have found that the defendants transported merchandise into this district knowing that it had been imported unlawfully.  In addition, the jury heard evidence that Mr. Pratt falsely told law enforcement officers in this district that the defendants purchased the monkey in California.  The jury rationally could have found that Mr. Pratt lied to law enforcement officers in order to conceal the true origin of the merchandise; hoping to prevent its confiscation.

*2. Venue for substantive charge*

"Any offense involving . . . the importation of an object . . . into the United States is a continuing offense and . . . may be . . . prosecuted in any district from, through, or into which such . . . imported object . . . moves."  18 U.S.C. § 3237(a).  The second paragraph of 18 U.S.C. § 545 proscribes, among other things, both the importation of merchandise contrary to law and the concealment of merchandise that has been imported contrary to law.  It follows that a violation of the second paragraph of § 545 is a continuing offense.  A § 545 violation may be prosecuted in any district into which the imported object moves.  In this instance, the defendants transported imported merchandise into this district.  Consequently, venue was proper.

G. Constructive Amendments

The defendants had a Fifth Amendment right to be tried upon the

ORDER - 14

charges set forth in the Superseding Indictment.  *United States v. Antonakeas*, 255 F.3d 714, 721 (9th Cir.2001).  "'[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.'"  *United States v. Hartz*, 458 F.3d 1011, 1019-20 (9th Cir.2006) (quoting *Stirone v. United States*, 361 U.S. 212, 215-16, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960)).  "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them."  *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir.1984).  As observed above, the defendants insist that Count One charged them with three conspiracies.  In the defendants' opinion, one conspiracy involved an alleged agreement to engage in conduct that violated the first paragraph of § 545; two other conspiracies involved alleged agreements to engage in conduct that violated the second paragraph of § 545.  The defendants argue that the Court constructively amended Count One in two respects.  For one thing, the defendants think the Court failed to instruct the jury concerning two of the conspiracies which were alleged in Count One.  For another thing, the defendants think the Court instructed the jury concerning a conspiracy which was not alleged in Count One.  The defendants' interpretation of the jury instructions is unpersuasive.  As the Court explained earlier, Count One did not allege multiple conspiracies.  It alleged a single conspiracy.  The Court instructed the jury with respect to the single

ORDER - 15

conspiracy that was alleged in Count One.  Furthermore, the Court's instructions to the jury did not broaden the scope of the charge; if anything, they narrowed it.  Section 545 covers a broad range of conduct.  The Court's jury instructions limited the scope of the defendant's potential liability.  For example, the Court instructed the jury that it could convict the defendants only if, among other things, it found "that there was an agreement between two or more persons to knowingly import a Rhesus Macaque into the United States contrary to law and/or knowingly conceal an unlawfully imported Rhesus Macaque and/or knowingly facilitate the transportation of an unlawfully imported Rhesus Macaque[.]"  (Jury Instruction No. 9.)

### H. Variance

Count Two alleged that "[o]n or about November 28, 2007," the defendants violated 18 U.S.C. § 545 in the Eastern District of Washington.  (Superseding Indictment at 7.)  According to the defendants, the Court did not require the jury to find that they violated § 545 in the Eastern District of Washington on or about November 28, 2007.  Nor, say the defendants, could the jury have made such a finding.  While they concede that they arrived in Los Angeles on or about November 28, 2007, they submit they did not arrive in the Eastern District of Washington until December 6, 2007.  It is true, as the defendants contend, that there is a variance between the date alleged in the Superseding Indictment (November 28, 2007) and the date upon which they arrived in the Eastern District of Washington with the

ORDER - 16

monkey (December 6, 2007). However, the defendants suffered no prejudice as a result of the variance. First, a violation of § 545 is a continuing offense. 18 U.S.C. § 3237(a). Thus, the offense did not stop when the defendants left the airport in Los Angeles. To the contrary, the offense continued from November 28, 2007, through December 6, 2007, and beyond. Second, the date of the offense is not a material element of § 545. Consequently, a variance that does not affect a defendant's substantial rights is harmless. Fed.R.Crim.P. 52(a). The variance cited by the defendants -- *i.e.*, eight days -- is too small, given the facts of this case, to affect their substantial rights. *See, e.g., United States v. Shea*, 493 F.3d 1110, 1118 (9th Cir.2007) (collecting cases).

I. Unduly Harsh Punishment

The defendants argue that Congress did not intend persons who engage in conduct like theirs to be prosecuted under 18 U.S.C. § 545. According to the defendants, Congress has enacted more specific statutes -- *e.g.*, the Lacey Act, 16 U.S.C. § 3371, *et seq.* -- to address the type of conduct that they engaged in. The defendants argue that the government could have, and should have, prosecuted them under the Lacey Act. Had the government done so, say the defendants, they would be facing punishment that is commensurate with the seriousness of their acts. Instead, in their opinion, they face unduly harsh punishment. The defendants urge the Court to protect them from felony convictions by granting judgment of acquittal under

ORDER - 17

either the rule of lenity or, perhaps, the Due Process Clause of the Fifth Amendment. The Court declines to do so. "When, as here, conduct violates more than one criminal statute the government may generally elect which statute it wishes to charge. . . . This is so even though one statute imposes felony penalties and the other merely imposes misdemeanor penalties." *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir.1986). Given this principle, the defendants are not entitled to judicial review of the government's decision to charge them with felonies under 18 U.S.C. § 545 rather than charging them with misdemeanors under some more specific statute. Nor are the defendants entitled to relief under the rule of lenity. As the government points out, "the rule of lenity applies only when the statutory language contains grievous ambiguity or uncertainty and when, after seizing everything from which aid can be derived, [a court] can make no more than a guess as to what Congress intended." *United States v. Banks*, 514 F.3d 959, 964 (9th Cir.2008) (internal punctuation and citations omitted). The second paragraph of § 545 is not so ambiguous that the Court must guess at its meaning. To the contrary, its reasonably clear. As a result, the rule of lenity is inapplicable.

**IT IS HEREBY ORDERED:**

1. Fran Ogren's motion for judgment of acquittal (**Ct. Rec. 230**) is **denied.**

2. Gypsy Lawson's motion for judgment of acquittal (**Ct. Rec. 232**)

ORDER - 18

is **denied.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___1st___ day of May, 2009.

> s/ Fred Van Sickle
> Fred Van Sickle
> Senior United States District Judge

ORDER - 19